UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
BRIAN A. ECKERT,

                              Plaintiff,

        -against-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                             Defendant.
-----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
23-CV-4054 (JMA) (AYS)

FILED
CLERK
1/29/2025 11:23 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

      Before the Court is an appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405 et seq. (the "SSA"). Plaintiff Brian A. Eckert challenges final determinations by the Commissioner of the Social Security Administration (the "Commissioner") that he is ineligible to receive Social Security disability insurance benefits. (See Compl., ECF No. 1.) Presently before the Court are the parties' cross-motions, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings. (ECF Nos. 11 & 12.) Upon consideration of the administrative record and for the reasons set forth herein, the Court denies Plaintiff's motion and grants Defendant's cross-motion for judgment on the pleadings.

                              **I.**      **BACKGROUND**

      On October 26, 2020, Plaintiff Brian A. Eckert filed a Title XVI application for Supplemental Security Income, alleging disability due to generalized anxiety disorder, schizoaffective disorder, attention deficit hyperactivity disorder (ADHD), and major depressive disorder, as of February 21, 2019. (Compl. ¶ 5; ECF No. 11-1 at 5.) The state agency denied the application and Plaintiff requested a hearing. (ECF No. 14, Administrative Transcript ("Tr.") 74-113, 153-81.) These claims were initially denied on April 7, 2021, and were denied again upon reconsideration on November 9, 2021. (Tr. 20.) Subsequently, Plaintiff requested a hearing, which

was held on March 3, 2022. (Tr. 14.) On June 24, 2022, Administrative Law Judge ("ALJ") Ena Weathers denied Plaintiff's claim for social security benefits, finding that Plaintiff was not disabled within the meaning of SSA. (Tr. 17-32.) On November 21, 2022, the Social Security Administration Appeals Council (the "Appeals Council") denied review. (Tr. 11-16.) ALJ Weather's June 24, 2022 decision is the final decision of the Commissioner. (Tr. 11.)

On June 1, 2023, Plaintiff appealed the final decision of the Commissioner by filing the instant complaint. (See Compl.) On May 20, 2024, the parties filed cross-motions for judgment on the pleadings. (ECF Nos. 11, 12.)

**A.        Plaintiff's Alleged Impairments**

Plaintiff Brian Eckert was born on October 10, 1980, and was 38 years old on his alleged disability onset date of February 21, 2019. (Tr. 80). Plaintiff completed three years of college education and has worked in the past as an administrative assistant and medical data processor. (Tr. 261.) He was laid off from his job as an administrative assistant in January 2016 when the business closed. (Tr. 47, 260.) As of June 24, 2022, Plaintiff lived at home with his parents. (Tr. 563.) Plaintiff suffers from generalized anxiety disorder, schizoaffective disorder, and ADHD. (349-352.)

In Plaintiff's January 2021 Function Report, he stated that his disorders "limit[ed] [his] ability to work" by affecting his focus, concentration, and memory. (Tr. 310.) Plaintiff reported no problems with personal care and was able to prepare meals, do yard work, perform household chores, and run errands. (Tr. 311-14.) Plaintiff stated that he could drive a car, shop, and manage his finances. (Tr. 313-14.) Plaintiff reported problems maintaining concentration when watching television and stated that he sometimes had problems with authority figures. (Tr. 314-15.) At the March 3, 2022, hearing, Plaintiff appeared with an attorney and testified that he had trouble with focus, concentration, and memory in very stressful environments. (Tr. 47.) Plaintiff claimed his

medications, which are discussed further below, did not work "nearly as much as they should." (Tr. 49.) Plaintiff further testified that he had problems communicating directly with people, and that he is unable to support himself. (Tr. 50.)

**B.      Medical Evidence**

The record that was presented to ALJ Weathers also contains a multitude of differing medical opinions from physicians and others regarding the nature of Plaintiff's alleged impairments. (See ECF. No 11-1 at 5; ECF No. 12-1 at 5.) Brief descriptions of these opinions are detailed below.

In September 2019, Plaintiff began treatment with psychologist Karen Giuliani, Ph.D. for treatment of generalized anxiety disorder, schizoaffective disorder, and ADHD. (Tr. 349-52; 364-67.) Dr. Giuliani notes that Plaintiff's schizoaffective disorder began in August 2017, and that his anxiety disorder and ADHD began in July of 2020. (Tr. 349.) Dr. Giuliani noted Plaintiff's concentration issues persisted, but that a stimulant medication had not been effective because it made him more anxious. (Tr. 376-77.) In April 2020, Plaintiff again complained to Dr. Giuliani that his medications were not effective, and she prescribed bupropion. (Tr. 373.) In June 2020, Dr. Giuliani noted that Plaintiff had visited the emergency department due to intense anxiety related to family issues, and she added gabapentin to his regimen. (Tr. 371). On August 21, 2020, Dr. Giuliani referred Plaintiff to a neurologist to evaluate his complaints of cognitive decline, but the mental status results were normal. (Tr. 372.) Plaintiff continued medication management with Dr. Guiliani into 2021. (Tr. 468-91.) On May 17, 2021, Dr. Guiliani indicated that Plaintiff was stable, in therapy, euthymic, and "good" with respect to the "activities of daily living." (Tr. 355.) On October 5, 2021, Dr. Guiliani wrote that Plaintiff was "stable on meds," but that Plaintiff "reported difficulty when employed because of impaired concentration and interpersonal skills."

(Tr. 350.) On November 18, 2021, Dr. Guiliani indicated that Plaintiff was "applying for jobs." (Tr. 467.)

Plaintiff also received medical treatment from primary care providers at Amityville Medical Care in 2019 and 2020. (Tr. 403-17.) During appointments in July, August, and September 2020, Plaintiff denied psychiatric symptoms of depression, anxiety, or hallucinations. (Tr. 406-17.) Additionally, objective findings from these visits indicate that Plaintiff had normal mood and affect, good insight, and, intact memory and judgment. (Tr. 406-17.)

On February 19, 2021, Dr. Erica King-Toler, Ph.D., conducted a consultative psychological evaluation on Plaintiff via video conferencing. (Tr. 420-425.) Plaintiff reported that he had been hospitalized for two weeks in 2012 due to anxiety and panic. (Tr. 420.) Plaintiff reported visiting Dr. Guiliani every three months beginning in 2019, and that he takes clozapine, lamotrigine, bupropion, and bethanechol. (Id.) Plaintiff reported a history of depressive and anxiety symptoms since age 18. (Id.) Plaintiff explained that his panic attacks had subsided, but "endorsed excessive apprehension and worry, irritability, difficulty concentrating, fear of being judged or negatively evaluated in a social setting and avoidance of social settings." (Tr. 421.)

Upon examination, Dr. King-Toler found that Plaintiff demonstrated average cognitive functioning, fair insight, and judgment, with a mild impairment in attention and concentration due to distractibility. (Tr. 422-23.) Dr. King-Toler opined that Plaintiff had no evidence of limitation in his abilities to: understand, remember, or apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions. (Tr. 423.) She assessed mild limitations in Plaintiff's abilities to: interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; and regulate emotions, control behavior, and

maintain well-being. (Id.) Additionally, Dr. King-Toler stated that Plaintiff's psychiatric problems did "not appear to be significant enough to interfere with his ability to function on a daily basis." (Id.) She diagnosed Plaintiff with major depressive disorder and social anxiety disorder. (Id.)

On April 1, 2021, state agency psychiatric consultant V. Ng, Ph.D., reviewed Plaintiff's medical records and opined that despite "[m]idly impaired attention and concentration" Plaintiff "would be able to understand, remember, and carry out simple instructions, maintain reasonable pace, interact, and adapt to unskilled work." (Tr. 92.) On October 7, 2021, state agency psychiatric consultant A Stockton, M.D., affirmed Dr. Ng's findings, concluding that "based on the evidence in file, we have determined that [Plaintiff] can adjust to other work." (Tr. 112.)

On March 16, 2021, Plaintiff received treatment from a new primary care provider. (Tr. 510.) He reported receiving psychiatric treatment every three months for schizophrenia, anxiety, and depression. (Id.) Plaintiff indicated that his mental condition was not completely controlled. (Id.) A physical examination was normal, and Plaintiff appeared alert and oriented to person, place, and time. (Tr. 511.) Plaintiff reported that his symptoms did not make it difficult for him to take care of things at home or get along with other people. (Id.)

On October 25, 2021, Plaintiff began psychotherapy with Elaine Terrana, Licensed Master Social Worker ("LMSW.") (Tr. 562.) He reported symptoms of anxiety, paranoia, and depression. (Id.) Plaintiff reported a history of depression since 2000 and a diagnosis of schizophrenia in 2005. (Tr. 563.) Ms. Terrana's mental status examination indicated appropriate dress and general appearance, unremarkable motor activity, withdrawn interview behavior, normal speech, depressed mood, flat affect, good insight, intact memory, good attention/concentration, unremarkable thought process, preoccupied thought content, unremarkable perception, and mildly impaired functional status. (Tr. 562.) Plaintiff reported to Terrana that he was looking for

5

employment. (Tr. 563.) Plaintiff's psychotherapy treatment plan included meeting with a headhunter, applying for job positions, joining a gym, and focusing on gratitude. (Tr. 564.)

On February 25, 2022, Dr. Giuliani completed a medical assessment form. (Tr. 486-88.) The form rated as "good" Plaintiff's abilities to follow work rules; use judgment; function independently; maintain personal appearance; and relate predictably in social situations. (Tr. 487.) It rated as "fair" his abilities to relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember, and carry out simple to complex instructions; behave in an emotionally stable manner; and demonstrate reliability. (Id.) Additionally, Dr. Giuliani attached a letter that stated:

> In completing the assessment, Mr. Eckert looks good on paper. However, his psychiatric disorder, though stabilized with medication and psychotherapy, causes him to be inconsistent in the workplace because he loses focus and gets stuck in moving forward with a task. He also self isolates and has much difficulty relating to people.

(Tr. 486.)

**D.    ALJ Weather's Decision**

ALJ Weathers issued her decision on June 24, 2022. (Tr. 17-32.) She applied the five-step process described below, pursuant to 20 C.F.R. § 404.1520. (Id.) At step one, ALJ Weathers determined that Plaintiff had not engaged in substantial gainful activity since the application date of October 26, 2020. (Tr. 23.) At step two, the ALJ found that Plaintiff had the severe impairments of generalized anxiety disorder, schizoaffective disorder, attention deficit hyperactivity disorder (ADHD), and major depressive disorder. (Tr. 23-24.) At step three, however, ALJ Weathers concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 24.) At step four, ALJ Weathers determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but he requires non-tandem tasks without strict

6

production pace and occasional interaction with coworkers and supervisors, and superficial direct interaction with the general public." (Tr. 26.) Finally, at step five, relying on written testimony from vocational expert Warren, ALJ Weathers concluded that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform work found in significant numbers in the national economy. (Tr. 32.) Specifically, ALJ Weathers found that Plaintiff could perform the jobs of industrial cleaner (20,000 jobs nationally), counter supply worker (20,000 jobs nationally), and hospital cleaner (49,000 jobs nationally). (Id.) Accordingly, ALJ Weathers concluded that Plaintiff was not disabled within the meaning of the SSA. (Id.)

## II.     LEGAL STANDARDS

### A.     Social Security Disability Standard

To qualify for disability benefits under Title XVI, an individual must be (i) insured for disability benefits; (ii) not have attained retirement age; (iii) be a U.S. citizen or a foreign national under certain circumstances not relevant here; and (iv) have a "disability." 42 U.S.C. § 423(a)(1). The SSA defines "disability" to mean that an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated implementing regulations prescribing a five-step analysis for ALJs to follow to determine if a claimant is eligible for disability benefits. See 20 C.F.R. § 404.1520. The Second Circuit summarizes that analysis as follows:

> First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not

7

> disabled. Second, if the claimant is not working, the Commissioner must determine whether the claimant has a "severe" impairment, *i.e.,* an impairment that limits [her] ability to do physical or mental work-related activities. *Id.* §§ 404.1520(c), 404.1521. If not, the claimant is not disabled. Third, if there is a severe impairment, the Commissioner determines if the impairment meets or equals the criteria of a *per se* disabling impairment contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P (Listings of Impairment). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant's impairment does not meet or equal a listed impairment, before proceeding to step four, the Commissioner determines, based on all the relevant medical and other evidence of record, the claimant's "residual functional capacity," which is what the claimant can still do despite the limitations imposed by his impairment. *Id.* §§ 404.1520(a)(4), (e), 404.1545(a). Fourth, the Commissioner considers whether the claimant's residual functional capacity permits [her] to return to his past relevant work. *Id.* §§ 404.1520(e), (f), 404.1560(b). If so, the claimant is not disabled. Fifth, if the claimant cannot return to [her] past work, the Commissioner considers, based on the claimant's residual functional capacity and vocational factors, whether the claimant can do other work existing in significant numbers in the national economy. *Id.* §§ 404.1520(g), 404.1560(b). If so, the claimant is not disabled.

Bushey v. Berryhill, 739 F. App'x 668, 671 (2d Cir. 2018). The claimant bears the burden of proof at steps one through four, and then the burden shifts to the Commissioner at step five to demonstrate that claimant is capable of work. Talavera v. Astrue, 697 F.3d 145 at 152 (2d Cir. 2012).

**B.      Standard of Review**

"The Court's review of a Commissioner's denial of disability insurance benefits is limited to two inquiries: (1) whether the Commissioner applied the correct legal standards in reaching a decision, and (2) whether the Commissioner's factual findings were 'supported by substantial evidence in the record as a whole.'" Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015)). "The Court will not, however, substitute its own judgement for that of the Commissioner's 'or determine de novo whether [the claimant] is disabled.'" Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012)); see also Greek, 802 F.3d at 374-75 ("The disability within the meaning of the Act belongs to the Commissioner.").

Regarding the first inquiry, the Court must determine whether "the claimant has had a full

8

hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted); accord Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Edwards v. Comm'r of Soc. Sec. Admin., No. 22-CV-4345, 2023 WL 6173526, at *2 (S.D.N.Y. Sept. 22, 2023) (quoting Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008)).

Inquiry into whether the Commissioner's factual findings are supported by substantial evidence requires the reviewing court to "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (internal quotation marks and citation omitted)). "Substantial evidence" is "more than a mere scintilla." Ryan on Behalf of V.D.C. v. Comm'r of Soc. Sec., No. 21-2947-CV, 2022 WL 17933217, at *1 (2d Cir. 2022) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The relevant question is not whether substantial evidence supports Plaintiff's position, but whether "substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). This is a "highly deferential standard of review." Spellman v. Comm'r of Soc. Sec., No. 2:21-CV-05842, 2023 WL 5350845, at *9 (E.D.N.Y. Aug. 21, 2023) (citing Negron v. Berryhill, 733 F. App'x 1, 2 (2d Cir. 2018)).

### III.   DISCUSSION

#### A.   Standards for Reviewing the ALJ's RFC Determination

In deciding a disability claim, an ALJ must "weigh all of the evidence available to make an [Residual Functional Capacity] ["RFC"] finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). The RFC determination represents "the most

9

[a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015); see also Crocco v. Berryhill, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating "an RFC determination indicates the 'nature and extent' of a claimant's physical limitations and capacity for work activity on a regular and continuing basis") (quoting 20 C.F.R. § 404.1545(b)).  The Court must uphold this determination when it is supported by substantial evidence.  See 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); Alvarez v. Comm'r of Soc. Sec., No. 20-CV-03963, 2023 WL 2464961, at *1 (E.D.N.Y. Mar. 10, 2023) (same).

As Plaintiff's disability application was filed after March 27, 2017, his claims are governed by the current regulations concerning the consideration of medical opinions.  See 20 C.F.R. § 416.920c.  "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight."  Knief v. Comm'r of Soc. Sec., No. 20-cv-6242, 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (quotation marks omitted).  ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the current regulations, ALJs "must evaluate the persuasiveness of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion." Rosario v. Comm'r of Soc. Sec., No. 21 CIV. 1151, 2022 WL 4593069, at *5 (S.D.N.Y. Sept. 30, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). "Supportability and consistency are the most important factors in evaluating a medical opinion." Id. (citing 20 C.F.R. § 404.1520c(b)(2)).  For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

10

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). "As part of his or her decision, the ALJ must explain how the factors of supportability and consistency were considered." Rosario, 2022 WL 4593069, at *5 (citing 20 C.F.R. § 404.1520c(b)(2)). Generally, the ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2); Rosario, 2022 WL 4593069, at *5.

**B.      Plaintiff's RFC**

Plaintiff argues that ALJ Weathers' RFC determination is not support by substantial evidence and that ALJ Weathers failed to comply with applicable regulations in evaluating medical evidence regarding Plaintiff's mental RFC. Plaintiff asserts that ALJ Weathers "mischaracterized certain medical findings to support his RFC" and "rejected or cherrypicked among the professional medical opinions, accepting only those portions that supported the ultimate disability finding." (ECF No. 11-1 at 12-13.) Specifically, Plaintiff takes issue with ALJ Weathers' references to "benign findings" during Plaintiff's visits with his primary care physicians and her assessment of Dr. Guiliani's medical opinion. (Id.) Plaintiff also contends that ALJ Weathers "fail[ed] to include any meaningful discussion of the supportability or the consistency factors" regarding Dr. Guiliani's opinion and how it fit into the overall record. (ECF No. 13-1 at 3.) Additionally, Plaintiff contends that ALJ Weathers "improperly substituted his own opinion for that of a physician." (Id. at 11.)

Plaintiff's arguments, however, are not supported by the record, and ALJ Weathers' decision is based on substantial evidence. It is the responsibility of the ALJ to decide what weight

11

to afford conflicting medical opinions and testimony in the record pursuant to the prescribed factors.  See 20 C.F.R. § 404.1520c.  The Court finds that ALJ Weathers carefully reviewed this record and complied with all regulations in rendering her decision.

ALJ Weathers was only "partially persuaded" by Dr. Guiliani's opinion and cited three specific reasons for that determination.  (Tr. 29.)  First, ALJ Weathers pointed out that the "support is rather weak" for Dr. Guiliani's opinion "as her records contain very few mental status findings and are instead just short blurbs about the course of each visit."  (Id. (internal citations omitted).)  Second, ALJ Weathers pointed out that the "mental status findings" from the February 2021 consultative examination and October 2021 psychotherapy intake visit provided more "meaningful insight into [Plaintiff's] ability to perform mental work-related activities."  (Id.)  Third, ALJ Weathers further analyzed Dr. Giuliani's opinion's consistency with the record, explaining that "the lack of psychological abnormalities observed during regular primary care visits indicates that he can perform those work-related activities on a regular and continuing basis."  (Tr. 30) (internal citations omitted.)  Plaintiff takes issue with ALJ Weathers' reference to these primary care visits, purportedly because these "examination[s] had nothing to do with [Plaintiff's] psychological complaints."  (ECF No. 11-1 at 12.)  That argument fails, however, to appreciate the ALJ's role in determining Plaintiff's RFC.  As stated above, the ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted).  Plaintiff's interactions with his primary care physicians are relevant to this analysis, and ALJ Weathers properly evaluated how the lack of psychological abnormalities at these visits weakened Dr. Giuliani's conclusion.  This was permissible and, notably, was just one of the reasons ALJ Weathers relied on in evaluating Dr. Guiliani's opinion.  ALJ Weathers' applied the applicable regulations and adequately explained her conclusion that Dr.

Giuliani's opinion was only partially supported by and consistent with the record—a conclusion that was supported by substantial evidence.  See 20 C.F.R. § 404.1520c.

Additionally, ALJ Weathers analyzed how Dr. Giuliani's opinion compared to other medical opinions in the record, specifically those of Dr. King-Toler and psychiatric consultants V. Ng, M.D., and A. Stockson, M.D.  (Tr. 30.)  ALJ Weathers found each of these opinions "partially persuasive."  (Id.)  Regarding Dr. King-Toler, ALJ Weathers explained that her finding that Plaintiff had "no more than mild limitations" was "less consistent with the mental health treatment records, though, which instead suggest some moderate limitations resulting from the claimant's social anxiety and ADHD."  (Id.)  ALJ Weathers also partially accepted Dr. Ng and Dr. Stockson's findings, as she found "claimant's complaints of social anxiety suggest that the claimant's abilities in that area of functioning are slightly more limited than they indicated."  (Id.)  She also found that although "both consultants opined that the claimant would be limited to unskilled work . . . the mental status findings show no objective signs of cognitive impairment that would suggest a need for such restriction."  (Id.)  ALJ Weathers' examination of the opinion evidence "indicates careful review of the testimony and focus on its consistency with the record."  Laxamana v. Comm'r of Soc. Sec., No. 2:22-CV-02060, 2023 WL 7930168, at *8 (E.D.N.Y. Oct. 30, 2023).  ALJ Weathers compares each opinion to the weight of the medical evidence in the record and includes "meaningful discussion of the supportability or the consistency factors," despite Plaintiff's claims to the contrary.  (ECF No. 13 at 3.)

Furthermore, the Court rejects Plaintiff's argument that ALJ Weathers improperly crafted an RFC by "replac[ing] competent medical opinion with his own lay opinion" in rejecting a "portion of Dr. Giuliani's findings." (ECF No. 11-1 at 13-14.)  That argument is without merit as it is ALJ Weathers' "responsibility to assess [the claimant's] RFC," and that determination "need not perfectly match any single medical opinion in the record, so long as it is supported by

13

substantial evidence." Spottswood v. Kijakazi, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (quoting Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022); see also Curry v. Comm'r of Soc. Sec., No. 20-1472, 855 F. App'x. 46, 48 n.3 (2d Cir. 2021) (stating that an "RFC finding is administrative in nature, not medical.")

Here, ALJ Weathers properly assessed how Dr. Guiliani's opinion fit with other medical evidence in the record, including the more benign findings during primary care exams, the opinions of Dr. King-Toler, Dr. Ng and Dr. Stockson, and the examination of Ms. Terrana. Based on the totality of this evidence, ALJ Weathers assessed an RFC that does not reflect a substantial departure from Dr. Giuliani's opinion, which states that Plaintiff's psychiatric disorder "causes him to be inconsistent in the workplace because he loses focus and gets stuck in moving forward with a task." (Tr. 29.) ALJ Weathers' RFC determination, limiting Plaintiff to work that "requires non-tandem tasks without strict production pace and occasional interaction with coworkers and supervisors" is supported by the totality of the record. Therefore, the Court finds that this RFC determination is one "that a reasonable factfinder could make based on the totality of evidence in this record," and contains no error. Spottswood, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024); see also Henderson v. O'Malley, No. 23-712-CV, 2024 WL 1270768, at *2 (2d Cir. Mar. 26, 2024) ("Contrary to Henderson's arguments before the district court, the ALJ did not ignore the portions of the agency consultant opinions favorable to Henderson. Even though the consultants noted that Henderson had some mental limitations, the consultants also found that her limitations were not severe enough to bar her from low-skilled work.")

The Court therefore concludes that ALJ Weathers' opinion is supported by substantial evidence and must be upheld. See 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); Alvarez, 2023 WL 2464961, at *1 (E.D.N.Y. Mar. 10, 2023) (same).

## IV. CONCLUSION

For the reasons stated above, the undersigned grants Commissioner's motion for judgement on the pleadings and denies Plaintiff's motion. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

Dated:   January 29, 2025
           Central Islip, New York

                                         /s/ JMA
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE